FILED
2008 Jul-02  AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

ROBBINS, LLC,

      PLAINTIFF,

v.                              CASE NO. CV-07-J-1428-NW

MIDWEST EMPLOYERS
CASUALTY COMPANY,

      DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment, evidence and brief in support of said motion (doc. 21), the plaintiff's brief and evidentiary submissions in opposition to said motion (doc. 23) and the defendant's reply to the plaintiff's opposition (doc. 25).   The court having considered said pleadings, briefs and evidentiary submissions, finds as follows:

## FACTUAL BACKGROUND

This case arises out of the injury of an employee of plaintiff Robbins, LLC ("Robbins") in 1989.  See defendant exhibit 1.  The employee, Dan Elliott, filed suit against plaintiff Robbins pursuant to the Workmen's Compensation Act of Alabama. Defendant exhibit 2.  After trial, the Circuit Court of Lauderdale County, Alabama, awarded Mr. Elliott a sum for past benefits, as well as ongoing payments of $164.98 per week for approximately 16 years, after which the sum of $182.66 per week for the

remainder of Mr. Elliott's life.  Defendant exhibit 3.  At the time, Mr. Elliott was 60

years old.  *Id*., at 00295.

At the time of Mr. Elliott's injury, his employer, Robbins, was self-insured for

purposes of worker's compensation coverage.  However, Robbins also had an excess

policy with defendant, Midwest Employers Casualty Company ("Midwest").

Defendant exhibit 5.  Pursuant to that policy, Robbins was liable for the first

$200,000 in payments per occupational injury, after which the Midwest policy would

apply and Midwest would be liable for the remaining payment.  *Id*., at 00006-00007.

That policy included the following provision:

> **PART SEVEN – CONDITIONS**
> *D.  Good Faith Settlement*
> The Insured shall use diligence, prudence and good faith in the
> investigation, defense and settlement of all such claims and shall not
> unreasonably refuse to settle any claim which, in the exercise of sound
> judgment, should be settled, provided, however, that the Insured shall
> not make or agree to any settlement for any sum which would involve
> the limits of the Insurer's liability hereunder without the approval of the
> insurer.

Defendant exhibit 5, at 00008.

Beginning sometime in 1993, Midwest informed Robbins that a lump sum

settlement to Mr. Elliott was in the interest of both Midwest and Robbins.[1]  *See e.g.,*

defendant exhibit 7.  Midwest suggested to Willis Corroon that while it would not

---

[1]Robbins' self-insurance was handled by Willis Corroon, a third-party administrator,

recommend a lump sum settlement for more than present value, they should at least obtain a demand from Mr. Elliott and see whether or not it was greater than present value.  Plaintiff exhibit C at 00173.  Robbins responded that while it had received a lump sum settlement demand of $75,000, it did not wish to make such a payment.[2] *See* plaintiff exhibit A at R-00100, R-00104, 00162, 00164; defendant exhibits 8, 10 and 11.  At the time, Midwest had calculated the future payout at the weekly rate to be $132,976.48 if Mr. Elliott lived an additional 14 years, which was his calculated life expectancy.  Defendant exhibit 7.  Moreover, Robbins had already paid out approximately $95,989.87.  *Id*.  Robbins offered the sum of $25,000.00 as a full settlement, to which Mr. Elliott's counsel stated that Mr. Elliott would accept the present value of the future payments, which was about $80,000.00.  Plaintiff exhibit A at R-00095; defendant exhibits 12 and 13.

As justification for its refusal to settle for the present value of the future payments, Robbins asserted that Mr. Elliott might not live out his life expectancy, and that Robbins was having cash flow difficulties which prevented a large settlement payment.  Defendant exhibit 14.  Midwest responded that there was no guarantee Mr. Elliott would not exceed his life expectancy and that Robbins would save money

---

[2]At some point, Mr. Elliott's counsel informed Willis Corroon that while Mr. Elliott would settle his case for $75,000.00, he was not that interested in settlement as he liked getting a weekly check.  Plaintiff exhibit C at 00164.

settling the case. *Id*. Midwest reminded Robbins that the contract between the parties contained a good faith settlement clause, which Midwest had not invoked at that time. *Id*.

Several months later, in June 1995, Midwest again told Robbins that the reasonable course of action was to settle Mr. Elliott's claim. Defendant exhibit 16. Midwest again reminded Robbins of the good faith settlement clause stating that "[t]his means that if a claim should reasonably be settled within the present value of its lifetime exposure, the insured should do so, even if this is considered by the insured not to be to its own benefit. The insured has a contractual obligation to Midwest Employers to exercise due diligence .... By not settling this claim for the present value, they are clearly failing to perform their fiduciary obligations under the policy." *Id*. Robbins again responded that it was unwilling to settle the claim fo $80,000.00, based on its belief that Mr. Elliott was in such poor health that he would not live very long. Defendant exhibit 17. Midwest informed Robbins that unless Robbins had evidence to support its claim regarding Mr. Elliott's health, Midwest would invoke the "Good Faith Settlement Clause" under the policy. *Id*. About the same time, Willis Corroon, the third-party administrator of Robbins' plan, informed Midwest that it too was aware that Robbins was resisting settlement and that it too

had recommended to Robbins that settlement was the wiser decision. Defendant exhibit 19.

Two months later, Midwest informed Robbins that in was invoking the Good Faith Settlement Clause, and therefore Midwest's exposure was limited to the $80,000.00 settlement demand. Defendant exhibit 18; *see also* plaintiff exhibit C at 00146. As a consequence, Midwest opined that, as this amount was within the self-insured limited, Midwest would no voluntarily reimburse Robbins for any amount paid exceeding the self-insured limited. Defendant exhibit 18.

In May 2007 Robbins requested reimbursement from Midwest, which had long since closed its file. Defendant exhibit 21. Midwest stated it would not be providing reimbursement because of Robbins' failure to settle the claim years prior for substantially less money. *Id.* This litigation then ensued. Robbins filed the current complaint against Midwest, asserting causes of action for the state law claims of breach of contract and bad faith. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II.  Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the

summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23.  The party moving for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to

the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.

R. Civ. Pro. 56(e).  In meeting this burden the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That

party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro.

56(e); *Matsushita*, 475 U.S. at 587.  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).   A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## III. Legal Analysis

### *Breach of Contract*

The parties do not dispute the basic facts of this case.  Rather, the sole dispute is whether Midwest's failure to reimburse Robbins for amounts paid to Mr. Elliott in excess of $200,000.00 constituted a breach of contract, or whether Robbins' failure to settle the claim of Mr. Elliott more that ten years previously resulted in a breach of the Good Faith Settlement Clause, absolving Midwest of liability.

Robbins argues that it has acted diligently, prudently and in good faith in its decision not to settle Mr. Elliott's claim.  Plaintiff's response, at 16.  The plaintiff further argues that whether or not it acted in good faith is a jury issue, inappropriate

for resolution by summary judgment.[3]  Plaintiff's response, at 18.  The plaintiff also argues that the policy in question does not allow Midwest to refuse reimbursement as a consequence of breach of the Good Faith Settlement Clause.  Plaintiff's response, at 20.

The Alabama Supreme Court stated, "we hold that, in the absence of contrary contractual obligations, a primary insurer owes no duty of good faith to an excess insurer with respect to the settlement of a lawsuit against an insured."  *Federal Ins. Co. v. Travelers Cas. and Sur. Co.,* 843 So.2d 140, 143 (Ala.2002).  Logically then, a primary insurer does owe a duty of good faith to an excess insurer with respect to the settlement of a lawsuit against an insured when there is a contractual provision setting forth such an obligation.

Here, the parties do not dispute that the duty to act in good faith was part of the policy.  Rather, the plaintiff asserts that its decision not to settle Mr. Elliott's claim was made in good faith, while the defendant asserts it was not.  Both parties have produced evidence in support of their respective positions.  Because this case is before the court on a motion for summary judgment, the court may not weigh the

---

[3]The two cases the plaintiff cites for this proposition both involve questions of materialman liens to recover amounts due for delivery of materials.  Plaintiff's response, at 18.  By statute and case law, such a situation requires proof that materials were delivered by a supplier in good faith. Although the cases cited by plaintiff do state that the delivery in good faith is most often a jury question, the court notes these cases have absolutely nothing to do with cases or statutes applicable to insurance policies.

evidence and determine a winner.  See e.g., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Rather, as the court finds this to be solely a question of fact, it is inappropriate for resolution by summary judgment.[4]

**Bad Faith Failure to Pay**

To establish a claim for bad faith, the plaintiff must establish (1) an insurance contract between the parties and a breach thereof by the defendant; (2) and intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate of arguable reason."  *Nobles v. Rural Community Insurance Services,* 303 F.Supp.2d 1292, 1304 (M.D.Ala.2004); citing *National Sec.  Fire & Causulty Co. v. Bowen*, 417 So.2d 179, 183 (Ala.1982).

---

[4]The plaintiff argues that even if it failed to act in good faith, defendant still was obligated to provide reimbursement under the policy.  Such an interpretation would render the Good Faith Settlement Clause meaningless. Under Alabama law, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole. *American Resources Ins. Co. v. H & H Stephens Const., Inc.*  939 So.2d 868, 873 (Ala.2006); citing *Turner v. United States Fidelity & Guar. Co.*, 440 So.2d 1026 (Ala.1983).  Should the defendant establish that the plaintiff did not act in good faith in failing to settle Mr. Elliott's case for a lump sum, that would constitute a breach of contract.  As stated, however, the court finds that resolution of the issue of whether the plaintiff acted in good faith is properly for a jury,

*See also Shelter Mut. Ins. Co. v. Barton,* 822 So.2d 1149, 1154 (Ala.,2001) ("a plaintiff must show that the insurer's decision not to pay was without any ground for dispute; in other words, the plaintiff must demonstrate that the insurer had no legal or factual defense to the claim. [T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim").

The Alabama Supreme Court has divided bad faith claims into two categories, those being "normal" bad-faith claims and "unusual" or "extraordinary" bad faith claims. *See Nobles*, 303 F.Supp.2d at 1305. Relevant to the issue before this court, for "normal" claims, a plaintiff must show that he or she is entitled to recover on the contract claim as a matter of law. If there is a genuine issue with regard to the insurer legitimately denied the plaintiff's claim, then summary judgment on the bad faith claim is due to be granted. *See id., citing National Sav. Life Ins. Co. v. Dutton*, 419 So.2d , 1357, 1362 (Ala.1982); *S & W Properties v. American Motorists Ins. Co.*, 668 So.2d 529, 533 (Ala.1995). Because the court has already found that a genuine issue exists as to whether Midwest legitimately denied Robbins' claim, i.e., the existence of a debatable reason, the court finds as matter of law that Midwest is entitled to judgment in its favor on Robbins' claim for bad faith.

### III.  Conclusion

The court having considered the foregoing, the court is of the opinion the defendant's motion for summary judgment is due to be granted in part and denied in part.  By separate Order, the court shall **GRANT** the motion on the plaintiff's claim for bad faith.  The court shall **DENY** the motion on the plaintiff's claim for breach of contract.

This case remains set for trial and pretrial conference as previously Ordered.

**DONE** and **ORDERED** this the 1st day of July, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE